**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DEBRA FRANCIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 4344 |
| | ) | |
| TIMOTHY SNYDER, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>

Before the court are the parties' cross-motions for summary judgment. For the reasons stated below, plaintiff's motion is granted and defendant's motion is denied.

<u>**BACKGROUND**</u>

Plaintiff Debra Francis brings this action alleging that a debt collection letter she received from defendant Timothy Snyder violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA" or "the Act"). The material facts are not disputed. Snyder, an attorney, is a debt collector for Quik Cash Loans. Quik Cash makes short-term, or "pay day," loans (usually for a term of 30 days or less) to individuals who can show proof of steady income. The security for the loan, and repayment with interest, is provided for by a check drawn on the debtor's account and dated for the end of the loan period. The debtor may prepay the loan at any time during the loan period to avoid prorated

interest charges.  If prepayment is not made, Quik Cash deposits the check at the end of the loan period, thus concluding the transaction.

In March 2000, Francis obtained a two-week loan from Quik Cash in the amount of $180.  However, when the two weeks passed and Quik Cash attempted to deposit Francis's repayment check, it was dishonored because Francis had placed a "stop payment" on the check.  Quik Cash's demands for payment went unheeded, so it referred the debt to two separate collection agencies.  The agencies sent Francis debt collection letters but those also went unanswered.  Quik Cash then referred the file to Snyder, who sent Francis the collection letter that is the subject of this lawsuit.

The letter, dated June 11, 2004 (hereafter, "the letter"), has a header which reads "Law Offices of Snyder & Associates" and provides an address and telephone number.  The body of the letter begins with the statement "Final Notice" in large, bold, capital letters.  The text of the letter is as follows:

> This notice has been sent by a law firm.
> This is an attempt to collect a debt.
> Any information obtained will be used for
> that purpose.  If paid in full to this
> office, all collection activity will be
> stopped.
>
> Unless you notify this office within
> thirty (30) days after receiving this
> notice that you dispute the validity of
> this debt or any portion thereof, this
> office will assume [the] debt is valid.
> If you notify this office in writing
> thirty (30) days from receiving this

> Notice that you dispute the validity of
> this debt or any portion thereof, this
> office will obtain verification of the
> debt or obtain a copy of a judgment and
> mail you a copy of such judgment or
> verification.  If you request in writing
> within 30 days after receiving this
> notice this off[ice] will provide you
> with the name and address of the original
> creditor, if different from the current
> creditor.
>
> If you have questions please contact
> <u>paralegal Leroy Buth</u> at this office,
> otherwise please make all Money Orders
> payable to SNYDER & ASSOCIATES, and send
> them to the address on this letterhead.

The letter continues in larger print:

> A bad check can be considered a violation
> of Illinois Statutes! (see attached)
>
> If you contact this office on receipt of
> this letter <u>you may</u> qualify for a <u>payment
> plan</u>.  If you do not call, the balance
> will be pursued in full, including
> collection costs.

The letter is signed above a signature block stating "Timothy

Snyder, Attorney at Law."  (Compl., Ex. A.)[1]

Francis has filed a complaint alleging that the letter

violates the FDCPA in two ways: (i) its statutorily-required notice

granting her 30 days to dispute the debt is "overshadowed" by other

language in violation of 15 U.S.C. § 1692g, and (ii) it contains a

---

[1]The fourth paragraph of the letter says "see attached,"  but
there is nothing attached to the copies of the letter appended to the
complaint or the present motions.  Snyder testified at his deposition
that he attached a duplicate of Francis's bad check to the letter he
sent her.

false and misleading threat of litigation in violation of 15 U.S.C. §§ 1692e. Both parties have moved for summary judgment on liability.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995). When there are cross-motions for summary judgment, the court is not obligated to grant judgment as a matter of law for one side or the other. The court must evaluate each

party's motion on its own merits, resolving all factual uncertainties and drawing all reasonable inferences against the party whose motion is under consideration. <u>See</u> <u>Gazarkiewicz v. Town of Kingsford Heights</u>, 359 F.3d 933, 939 (7th Cir. 2004).

### The FDCPA

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The Act establishes certain standards for debt collectors' communications with debtors, including, *inter alia*, a requirement that collectors advise debtors of their rights to dispute and demand verification of the debt, <u>id.</u> § 1692g, and a prohibition against "false, deceptive or misleading" statements in collection letters. <u>Id.</u> § 1692e.

Courts in the Seventh Circuit evaluate whether a communication from a debt collector violates the Act "through the eyes of an unsophisticated consumer." <u>Jang v. A.M. Miller & Assocs.</u>, 122 F.3d 480, 483-84 (7th Cir. 1997). The unsophisticated consumer is a "hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading." <u>Gammon v. GC Servs. Ltd. Partnership</u>, 27 F.3d 1254, 1257 (7th Cir. 1994). The level of sophistication of the "unsophisticated consumer" is "low, close to the bottom of the sophistication meter." <u>Avila v. Rubin</u>, 84 F.3d 222, 226 (7th Cir. 1996). "This assumes that the debtor is uninformed, naive, or

trusting[.]" <u>Fields v. Wilber Law Firm</u>, 383 F.3d 562, 564 (7th Cir. 2004) (citation omitted.) Still, an unsophisticated consumer possesses "rudimentary knowledge about the financial world," and is "capable of making basic logical deductions and inferences." <u>Id.</u> (citation omitted.)

The "Overshadowing" Claim

Francis's first claim is that the letter violates 15 U.S.C. § 1692g. That section requires debt collectors to include in collection letters a "validation notice" telling the recipient that she has 30 days to dispute the validity of the debt. <u>See</u> 15 U.S.C. § 1692g(a)(4). The notice must also explain that (i) if the debtor disputes the debt, the collector must stop collection efforts until it sends information verifying the debt, <u>id.</u> § 1692g(b), and (ii) if the debtor does not dispute the debt, the collector may assume it is valid. <u>Id.</u> § 1692g(a)(3). Reciting this language in a collection letter does not by itself guarantee compliance with § 1692g; the debt collector must also refrain from including other language that "overshadows" or contradicts the validation notice. <u>Chauncey v. JDR Recovery Corp.</u>, 118 F.3d 516, 518 (7th Cir. 1997). "A debt validation notice, to be valid, must be effective, and it cannot be cleverly couched in such a way as to eviscerate its message." <u>Avila</u>, 84 F.3d at 226.

Francis concedes that the letter contains the required validation notice, but she contends that the following language in

the first and last paragraphs of the letter contradicts the notice:

> If paid in full to this office, all
> collection activity will be stopped.
>
> *     *     *
>
> If you contact this office on receipt of
> this letter you may qualify for a payment
> plan.  If you do not call, the balance
> will be pursued in full, including
> collection costs.

(Compl., Ex. A.)  Francis argues that this language implies that *on receipt of the letter* she had to either pay in full or arrange a payment plan, or collection efforts, including litigation (more on this below), would commence immediately.  This message, according to Francis, contradicts her right to dispute the debt within 30 days.

Snyder counters that the letter does not run afoul of § 1692g because the contested language does not expressly contradict Francis's validation rights: it simply states "what the defendant is entitled to do, and takes nothing away from the plaintiff's rights." (Def.'s Mot., p. 6.)

*Both* parties take too narrow a view of what will constitute "overshadowing" under § 1692g.  There need not be an express contradiction of the validation notice.  As the Seventh Circuit has explained:

> [A]lthough many opinions inquire whether
> language in a dunning letter "contradicts
> or overshadows" the statutory notice,
> these words are not themselves the
> applicable rule of law; a court must

> inquire whether the letter is confusing.
> . . . Language that contradicts . . . the
> statutory notice may make a letter
> confusing, but to say that these are
> *sufficient* means of showing confusion is
> not to say that they are *necessary*. A
> contradiction is just one means of
> inducing confusion . . . another is . . .
> the failure to explain an *apparent*,
> though not actual contradiction.

Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir. 1999)

(citations and internal quotations omitted.) The test, then, is

one of "confusion"; would the letter lead the unsophisticated

consumer to be confused about her rights under the FDCPA? See

Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997); Avila, 84

F.3d at 226; Chauncey, 118 F.3d at 519.

For example, in Bartlett, the letter at issue contained

the required statutory language, but added the following: "if you

wish to resolve this matter before legal action is commenced, you

must do one of two things within one week of the date of this

letter," namely, pay $316 toward the $1700 debt or call the

creditor to make payment arrangements. 128 F.3d at 498. The

letter also stated that "suit may be commenced at any time before

the expiration of this thirty (30) days." Id. at 499. The

plaintiff alleged an "overshadowing" claim under § 1692g, and the

district court entered judgment for the defendant. The Seventh

Circuit reversed, and directed the district court to enter judgment

for the plaintiff. The Court agreed with the defendant that the

letter did not contain a logical contradiction – the FDCPA does not

prohibit a debt collector from instituting litigation before the validation period expires – but without an explanation as to how the threat to sue within one week "fit[s] together" with plaintiff's right to dispute the debt within 30 days, the court held that the letter "turn[ed] the required disclosure into legal gibberish." Id. at 501. And that, according to the court, is "as bad as an outright contradiction." Id. The court concluded by suggesting explanatory language that would have made the letter compliant:

> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt . . . within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.

Id. at 502.

In Johnson, another "overshadowing" case, a collection letter included the necessary notice, but also stated: "The above account has been placed with our firm for payment in full. Call our office immediately upon receipt of this letter. Our toll free number is 1-800-521-3236." 169 F.3d at 1059. The debtor sued under § 1692g and the district court dismissed the action for failure to state a claim. The Seventh Circuit reversed, reasoning that the district court "never asked whether the failure to explain an *apparent* though not actual contradiction between the demand for

an 'immediate' call and the 30 days to give written notice made the letter confusing." Id. at 1060.

Bartlett and Johnson inform our analysis here. Snyder is correct that, as a matter of logic, his letter is not internally inconsistent – it does not say "you do not have 30 days to dispute the debt." Yet, by warning the recipient that the "balance will be pursued in full" if she does not call "on receipt of this letter," while, at the same time, granting her 30 days to challenge the validity of the debt, the letter presents two statements that an unsophisticated consumer could reasonably find contradictory, or at least confusing. Without an explanation like the one commended in Bartlett, the directive to take action "on receipt of this letter" may leave the unsophisticated consumer with the impression that she must act now, not within thirty days, to take advantage of her rights under the Act. That *we* may understand the gist of the letter does not help Snyder: "[u]nsophisticated readers may require more explanation than do federal judges; what seems pellucid to a judge, a legally sophisticated reader, may be opaque to someone whose formal education ended after sixth grade." Johnson, 169 F.3d at 1060. Because the letter leaves the door open to an inaccurate, but reasonable, interpretation by an unsophisticated consumer, the letter is "confusing" and therefore violates §

-11-

1692g.[2]  Francis's motion for summary judgment is granted on the "overshadowing" claim.

### The "Threat of Litigation" Claim

Section 1692e of the Act forbids a debt collector from using any "false, deceptive or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e. The section provides a nonexhaustive list of prohibited conduct, including "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."  Id. § 1692e(5).

Francis claims that the letter violates § 1692e(5) by threatening her with legal action that was not available or, alternatively, that Snyder did not intend to pursue.  The first question posed by the statute is whether the letter conveys a "threat to take [legal] action."  Judge Castillo of this court summed up the inquiry as follows:

---

[2]Snyder argues, rather feebly, that even if we find that the validation notice in his letter was overshadowed, he is spared from liability under the Act because Francis received other unencumbered notices from the collection agencies.  We disagree.  The requirement of providing valid disclosures under § 1692g applies to each debt collector.  See Griswold v. J&R Anderson Business Servs., No. 82-1474-PA, 1983 U.S. Dist. LEXIS 20365 (D. Or. Oct. 21, 1983).

Snyder's answer also alleges that if the court were to find an "overshadowing" violation, it was the result of "mistake, inadvertence, and/or excusable neglect."  (Answer, p. 3.)  It is true that a debt collector may escape liability if he can demonstrate that its "violation [of the Act] was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c). However, Snyder makes no mention of the argument in his motion papers so we deem it waived.

> For a collection letter to threaten legal action under § 1692e(5), it must communicate that a lawsuit is not merely a possibility, but that a decision to pursue legal action is either imminent or has already been made. Courts have found litigation threats even in indirect or oblique statements, provided they imply legal action is underway or contemplated in the near future.

Jenkins v. Union Corp., 999 F.Supp. 1120, 1136 (N.D. Ill. 1998). In addition, and significant here, when the collection letter is from an attorney, "even a casual reference to litigation . . . would likely signal that a lawsuit is imminent to an unsophisticated consumer." Powell v. Messineo, 00 C 4105, 2001 U.S. Dist. LEXIS 1594, at *3 (N.D. Ill. Jan. 10, 2001); see also Avila, 84 F.3d at 229 ("An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up."); Jenkins, 999 F.Supp. at 1137 ("[I]n cases where the likelihood of legal action is not clear from the language, the letter's source can be determinative, especially if it purports to be from an attorney."); United States v. Nat'l Financial Servs., 98 F.3d 131, 136 (4th Cir. 1996) ("[T]o most consumers, the relevant distinction between a collection agency and an attorney is the ability to sue. . . .").

Francis's argument, in sum, is that when an unsophisticated consumer receives a letter from a law office and signed by a lawyer, with a bold heading declaring "final notice" and back-to-back warnings that "a bad check can be considered a

violation of Illinois Statutes!" and that a failure to contact the office immediately will mean "the balance will be pursued in full, including collection costs," she could reasonably conclude that a lawsuit was at hand. Snyder's response focuses on the sentence stating that "a bad check can be considered a violation of Illinois Statutes!" He argues that this is simply a true statement, and does not threaten a lawsuit.

Once again, Snyder advances an overly-literal interpretation of the statute. What is the point of saying "a bad check can be considered a violation of Illinois Statutes!" other than to indicate to the debtor that she may be sued, particularly when the letter is from an attorney. And combining that language with the "final notice" heading and the warning that if the debtor did not make immediate contact, "the balance will be pursued in full, including collection costs," might leave any consumer, not just an unsophisticated one, with the impression that such a suit was coming soon. The letter contained a "threat of [legal] action" under § 1692e(5).

Of course, the threat of a lawsuit is problematic under the statute only if it "cannot legally be taken" or "is not intended to be taken." Francis argues both. On the first claim, Snyder identifies 810 ILCS § 5/3-806 as the "Illinois Statute" to which his letter refers. That statute provides, in relevant part:

> Any person who issues a check or other
> draft that is not honored upon

>presentment because the drawer does not
>have an account with the drawee, or
>because the drawer does not have
>sufficient funds in his account, or
>because the drawer does not have
>sufficient credit with the drawee, shall
>be liable in the amount of $25, or for
>all costs and expenses, including
>reasonable attorney's fees, incurred by
>any person in connection with the
>collection of the amount for which the
>check or other draft was written,
>whichever is greater, and shall be liable
>for interest upon the amount of the check
>or other draft at the rate provided in
>subsection (1) of Section 4 of the
>Interest Act. Costs and expenses shall
>include reasonable costs and expenses
>incurred in the nonlitigated collection
>of the check or other draft.

810 ILCS § 5/3-806. Francis contends that the statute does not apply; her check was dishonored not because she did "not have an account with the drawee" or "[in]sufficient funds" or "[in]sufficient credit," see 810 ILCS § 5/3-806, but because she "stopped payment" on the check, and that conduct is not proscribed in the statute. We have to agree. The statute lists three circumstances under which a dishonored check may give rise to liability, and a drawer placing a "stop payment" on the check is not among them. Under a plain reading of the statute, Francis is not liable. Absent any authority that suggests a different reading, and Snyder offers none, we conclude that Snyder did not have a claim against Francis under 810 ILCS § 5/3-806. And because that is the only statute on which he relies, Francis is entitled to summary judgment on her claim that the letter contained a threat of

-15-

a lawsuit that was legally baseless. Having found that the letter violates § 1692e(5) because it contained a threat of an action that "cannot legally be taken," we need not discuss Francis' alternative contention that it was also an action "not intended to be taken." 15 U.S.C. § 1692e(5).

In sum, then, Francis's motion for summary judgment is granted on her § 1692g "overshadowing" claim and on her § 1692e(5) claim that the letter presented a threat of action that was legally untenable. Snyder's motion is denied in its entirety.

## CONCLUSION

For the foregoing reasons, Francis's motion for summary judgment [11-1, 18-1] is granted and Snyder's motion for summary judgment [10-1] is denied. A status hearing is set for October 12, 2005 at 10:30 at which counsel should be prepared to discuss the issue of damages on Francis's claims.

DATE:    September 30, 2005

ENTER:   _____
         John F. Grady, United States District Judge